UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| In re: MERRILLVILLE SURGERY CENTER, LLC, ) ) ) | |
| Debtor, ) ) | CAUSE NO.: 2:12-CV-253-TLS |
| ) | |
| KENNETH A. MANNING, ) ) | Bankr. Case No. 10-20005 |
| Plaintiff, ) ) | Chapter 7 |
| ) | |
| v. ) ) | Adversary No. 12-2002-JPK |
| METHODIST HOSPITALS, INC., ) ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The Plaintiff, Kenneth A. Manning as Chapter 7 Trustee of the bankruptcy estate of Merrillville Surgery Center, LLC, has filed a "Complaint to Avoid Certain Transfers Pursuant to 11 U.S.C. §§ 544, 547 and 548 and to Recover the Value of the Avoided Transfers Pursuant to 11 U.S.C. § 550." The Plaintiff also filed a "First Amended Complaint to Avoid Certain Transfers Pursuant to 11 U.S.C. §§ 544, 547 and 548 and to Recover the Value of the Avoided Transfers Pursuant to 11 U.S.C. § 550," which sets forth additional information with respect to the alleged avoidable and recoverable transfers, and includes additional documentary evidence. Defendant Methodist Hospital, Inc. (Methodist) asserts that, even with these additions, the Trustee's pleading "suffers from fatal pleading deficiencies and ultimately fails to state plausible claims against Methodist" (Br. in Supp. of Def.'s Mot. to Dismiss 1–2, ECF No. 9), and has moved to dismiss the First Amended Complaint (Def.'s Mot. to Dismiss, ECF No. 8).

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 555). Legal conclusions can provide a complaint's framework, but unless

well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## ANALYSIS

The essence of the Trustee's claims are that Methodist, as the buyer, and Merrillville Surgery Center, as the seller of the assets of an ambulatory surgery center, were "essentially the same party," and that Methodist unilaterally set a purchase price and then "made off with [Merrillville]'s cash and other assets while [Merrillville]'s creditors were left holding the bag." (Trustee's Resp. 1, ECF No. 12.) According to the Trustee, when Merrillville filed for bankruptcy, there were no assets for its creditors, all of its assets having already been misappropriated by Methodist. (*Id.* 1–2.) The Trustee seeks recovery under fraudulent conveyance laws, which are intended to "protect[] creditors from last-minute diminutions of the pool of assets in which they have interests." *Bonded Fin. Sers., Inc. v. European Am. Bank*, 838 F.2d 890, 892 (7th Cir. 1988).

### A.      Complaint Allegations

The following factual allegations are common to all the counts of the First Amended Complaint:

Merrillville, a limited liability company, operated an ambulatory surgery center.

Methodist was one of many members of Merrillville, and the entities had overlapping management. Methodist supervised Merrillville's employees and held itself out as the administrator of the ambulatory surgery center. Methodist was also the tenant of the property that housed Merrillville, and it subleased the property to Merrillville to operate its ambulatory surgery center. The sublease required Merrillville to pay Methodist a $216,000 security deposit. In both 2007 and 2008, there was a large variance between Merrillville's budgeted rent and its actual rent, which was dramatically higher than the budgeted rent. The Trustee believes that these unexplained variances show that Methodist unilaterally increased the sublease rent to more than market rent.

In August 2008, Methodist acquired all of Merrillville's membership units in a stock sale and became the sole owner of Merrillville. A few months later, on December 1, 2008, Methodist acquired Merrillville's assets. The total purchase price was $764,878.00, which the Trustee alleges Methodist unilaterally set as the purchase price without any arms' length negotiation. The unpaid rent from Merrillville to Methodist, as of December 1, 2008, was $983,647.81, so no cash passed from Methodist to Merrillville to close the asset sale. Methodist purportedly acquired Merrillville's cash in the asset sale. Just prior to the sale, Merrillville's bank statement reflected $103,000 in cash. After the asset sale, Merrillville's bank statement, which was still open, showed $176,000 in cash. In January 2009, Merrillville had at least $117,389.65 in cash, which dropped to $3,512.64 by January 5, 2010, the date Merrillville filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Bank statements show large amounts of cash paid out to third parties, including Methodist, between January 5, 2009, and January 5, 2010. During the course of the bankruptcy proceedings, Methodist did not file a proof

of claim for the difference between the unpaid rent as of December 1, 2008, and the asset sale purchase price.

**B.      Count I–Avoidance of Payments as Preferential Under 11 U.S.C. § 547(b)**

The Plaintiff has agreed to voluntarily dismiss Count I of the Amended Complaint, and Methodists's Motion to Dismiss this claim is granted.

**C.      Count II–Avoidance of Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(A)**

The Trustee alleges that Methodist violated § 548(a)(1)(A) of the Bankruptcy Code, which provides that a trustee may avoid transfers made within two years before the filing of the petition if the debtor made them "with actual intent to hinder, delay, or defraud" its creditors. A cause of action under § 548(a)(1)(A) is often referred to as "actual fraud" because of the intent element. The Trustee alleges that both the security payment for the sublease and the assets from the asset sale were fraudulent transfers and are thus avoidable under § 548(a)(1)(A).

Methodist asserts that claims for actual fraudulent transfers must satisfy the requirements of Rule 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (made applicable through Bankruptcy Rule 7009). Rule 9(b) also states that intent, and other conditions of a person's state of mind, "may be alleged generally." Fed. R. Civ. P. 9(b).

1.      The Security Deposit

The Trustee alleges, "upon information and belief," that Methodist received a security

deposit from Merrillville. The First Amended Complaint does not identify the timing of this payment. This allegation omits a critical circumstance of the fraud—when it occurred. Accordingly, there is no factual allegation to support the conclusory statement that Methodist received funds from Merrillville within two years prior to the petition date. The allegations in the First Amended Complaint with respect to the security deposit are insufficient to meet the particularity requirements of Rule 9(b), or to raise a right to relief above the speculative level and satisfy the Rule 8 pleading requirements. The Trustee's assertion that it is proper to infer and allege performance of a contractual allegation does not alter this conclusion. The Trustee's only support for this assertion is an unpublished district court case that discussed the requirements for filing a breach of contract action. *See Wash. Nat'l Ins. Co. v. The Adm'rs*, No. 90 C 7172, 1991 WL 202589, at *2 (N.D. Ill. Oct. 2, 1991).

2.     The Asset Sale

The Trustee alleges that the asset sale, which closed on December 1, 2008, was made with the actual intent to hinder, delay, or defraud entities to which Merrillville was indebted to or became indebted to on or after the date of the asset sale.

Methodist argues that the claim fails because the asset sale was a transfer made in satisfaction of a bona fide, antecedent debt without any intent to defraud creditors. "While a transfer made in satisfaction of antecedent debt is made for 'value,' *see* 11 U.S.C. § 548(d)(2)(A), such a transfer may nonetheless have been made with actual fraudulent intent." *In re Equip. Acquisition Res., Inc.*, 481 B.R. 422, 428 (Bankr. N.D. Ill. 2012) (holding that "dismissal was not warranted merely because reasonably equivalent value may have been given

through the satisfaction of antecedent debt owed by Debtor to the Defendant"); *see also Hayes v. Palm Seedlings Partners–A (In re Agric. Research and Tech. Group, Inc.)*, 916 F.2d 528, 538 (9th Cir. 1990) (under Section 548(a)(1)(A), "the entire transfer may be avoided, even if reasonably equivalent value was given, so long as the transferor actually intended to hinder, delay or defraud its creditors and the transferee accepted the transfer without good faith"). Methodist asserts that the Trustee is not entitled to any presumption of fraudulent intent. But the Trustee has pled intent and, under Federal Rule of Civil Procedure 9(b), intent "may be alleged generally." Whether the Trustee will be able to establish that Methodist had the requisite intent to hinder, delay, or defraud Merrillville's creditors through its purchase of Merrillville's assets is not an issue properly before the Court on the motion to dismiss.[1] The Trustee has alleged who

---

[1] The Trustee asserts that where there is no direct evidence of fraudulent intent, the trustee may rely on certain "badges of fraud." *See Gouveia v. Cahillane*, 408 B.R. 175, 191 (Bankr. N.D. Ind. 2009). Those "badges of fraud" are:

> whether the debtor retained possession or control of the property after the transfer, whether the transferee shared a familial or other close relationship with the debtor, whether the debtor received consideration for the transfer, whether the transfer was disclosed or concealed, whether the debtor made the transfer before or after being threatened with suit by creditors, whether the transfer involved substantially all of the debtor's assets, whether the debtor absconded, and whether the debtor was or became solvent at the time of the transfer.

*Id.* (quoting *In re Frierdich*, 294 F.3d 864, 870 (7th Cir. 2002)); *see also Grede v. Bank of New York Mellon*, 441 B.R. 864, 881 (N.D. Ill. 2010) (identifying badges of fraud as (1) whether the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (2) whether the debtor retained control of the asset; (3) whether the transfer was to a family member; (4) whether the transfer was prior to the debtor incurring a substantial debt; (5) whether the transfer was substantially all of the debtor's assets; (6) whether the debtor received consideration for the transfer; (7) whether the transfer was disclosed or concealed; (8) whether the debtor made the transfer before or after being threatened with suit by creditors; and (9) whether the debtor absconded). Methodist asserts that the allegations establish only that it may have been preferred over other creditors, but that this is insufficient to establish actual fraud. Methodist maintains that the Trustee is attempting to transform an untimely preference claim into a claim for an actual fraudulent transfer claim. These arguments, as well as others that the parties make concerning the circumstances under which fraudulent intent may be inferred, are beside the point at this stage in the proceedings. The Trustee will carry the burden of proving a fraudulent transfer under § 548, *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002), but for purposes of pleading, general allegations

made the transfer, what was transferred, and when the transfer occurred.

As an additional argument in favor of dismissal, Methodist contends that the Trustee has failed to identify any creditors who were hindered, delayed, or defrauded by the transaction. In response, the Trustee states that "[a]s a practical matter, every creditor of [Merrillville] was potentially hindered, delayed or defrauded" by the asset sale, and that it is not required to specifically identify the creditors. (Trustee's Resp. 10, ECF No. 12.) The Court agrees that this requirement does not appear in the language of § 548(a)(1)(A), and that failure to specifically identify the creditors does not warrant dismissal of Count II with respect to the asset sale.

### D. Count III–Avoidance of Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B), and Count IV—Avoidance of Fraudulent Transfers Under 11 U.S.C. § 544

In Count III of the First Amended Complaint, the Trustee alleges that the assets from the asset sale and the security deposit are avoidable under 11 U.S.C. § 548(a)(1)(B). Section 548(a)(1)(B) of the Bankruptcy Code provides that a trustee may avoid transfers made within two years before the filing of the petition if the debtor:

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

---

of intent are sufficient.

11 U.S.C. § 548(a)(1)(B).

In Count IV, the Trustee seeks to avoid certain transfers Merrillville made to Methodist pursuant to 11 U.S.C. § 544(b). This statute provides that a trustee may avoid any transfer of the debtor's property that is otherwise avoidable under applicable state law, here, the Indiana Uniform Fraudulent Transfer Act (IUFTA), Indiana Code § 32-18-2-15. 11 U.S.C. § 544(b). Section 15 of the IUFTA allows a trustee to avoid any transfer of the debtor's property made where the debtor did not receive reasonably equivalent value in exchange for the transfers and was either insolvent at the time of the transfer or became insolvent as a result of the transfer. Ind. Code § 32-18-2-15.

In the First Amended Complaint, the Trustee alleges that Methodist did not receive reasonably equivalent value in exchange for the assets of Merrillville or for its security deposit. He alleges that Merrillville was insolvent on the date of the fraudulent transfers, or became insolvent as a result of the transfers, as evidenced by the fact that the fair market value of the property still owned by Merrillville was less than the sum of its debts, and the property remaining in its ownership and control was "an unreasonably small capital" for a health services provider. (First Am. Compl. ¶¶ 38, 39.) The Trustee alleges that, at the time of the transfers, Merrillville intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as they matured.

To obtain relief under § 548(a)(1)(B), the Trustee must establish not only that the transfers were for less than a reasonably equivalent value, but also that the Debtor was insolvent at the time of the transfers or became insolvent as a result of the transfers. *Dunham v. Kisak*, 192 F.3d 1104, 1109 (7th Cir. 1999).

> The Bankruptcy Code does not define the term "reasonably equivalent value." Whether "reasonably equivalent value" has been given is a question of fact. *In re Crystal Med. Prods., Inc.*, 240 B.R. 290, 300 (Bankr. N.D. Ill. 1999). The factors utilized to determine reasonably equivalent value are: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at an arm's length; and (4) the good faith of the transferee. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997); *Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.)*, 238 B.R. 758, 773 (Bankr. N.D. Ill. 1999).

*In re Roti*, 271 B.R. 281, 295 (Bankr. N.D. Ill. 2002). Under Rule 8 pleading requirements, a complaint must do more than just summarily mirror the elements of § 548(a)(1)(B). *See Iqbal*, 556 U.S. at 678 (noting that a court need not accept as true "[t]hreadbare recitals of the elements of a cause of action's elements, supported by mere conclusory statements") (citing *Twombly* at 555).

With respect to insolvency, the Bankruptcy Code uses a balance sheet approach. *See* 11 U.S.C. § 101(32). An entity is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32)(A).

1.  The Security Deposit

As noted already, the Trustee does not allege with particularity when Merrillville paid the security deposit to Methodist. In the Seventh Circuit, Rule 9(b) pleading standards apply to constructive fraudulent transfer claims. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997). The timing of the payment is an important elements, as

evidenced by Methodist's argument that the Trustee cannot avoid transfers made pursuant to the 2004 Sublease Agreement because it is beyond the maximum four-year look back period under the IUFTA. In response to this argument, the Trustee clarifies that he is not challenging the payment of the security deposit by Merrillville to Methodist in 2004 for purposes of avoidance in Counts III and IV. Rather, the Trustee contends, he is asserting that Methodist failed to return the security deposit to Merrillville or apply the amount of the security deposit to Methodist's purchase of assets, and that this constituted a fraudulent transfer. No such claim, however, can reasonably be gleaned from the pleadings, which allege "upon information and belief" that Methodist received a $216,000 security deposit from Merrillville. The Trustee then alleges that Methodist purchased the assets of Merrillville for $764,873 without exchanging cash because Merrillville owed $983,647.81 in rent. These allegations with respect to the security deposit are insufficient to meet the particularity requirements of Rule 9(b), or to raise a right to relief above the speculative level and satisfy the Rule 8 pleading requirements.

2.  The Asset Sale

Regarding the value of the exchange in the asset sale, Methodist argues that the Trustee's allegations are not sufficient because he has not alleged that Merrillville's assets were actually worth more than the debt owed by Merrillville to Methodist for unpaid rent. Methodist argues that the alleged unexplained variances between Merrillville's budgeted and actual rent do not lend any credence to the Trustee's allegation that Methodist unilaterally increased Merrillville's rent to an above-market rate, and that, in fact, the 2004 Sublease Agreement required rent to be established by a third-party landlord. Although neither party has provided a copy of the 2004

11

Sublease Agreement, the Court agrees that a variance between the two numbers does not, without more, plausibly suggest that Methodist inflated the number. Merrillville could have just as easily erroneously budgeted for rent. In addition, the Trustee makes no effort to define "market rent."  There is insufficient factual information in the First Amended Complaint to support an inference that the amount of rent required under the sublease exceeded the fair rental value of the ambulatory surgery center. Therefore, the Court cannot infer from the allegations that the consideration Methodist provided in the form of debt forgiveness was less than the amount of the assets transferred. The Trustee also alleges facts showing that because Methodist and Merrillville were one in the the same entity, that Merrillville did not solicit any outside bids for its assets. Apart from the allegations regarding rent, however, the Trustee does not allege how the unilateral price set by Methodist was less than the reasonably equivalent value of the assets Merrillville transferred. Rather, the entire presumption regarding value is dependent on the debt for rent having been inflated.

The Trustee's allegations do not plausibly suggest that the Trustee has a right to relief that rises above a "speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Trustee is not allowed to proceed on Counts III and IV as currently pled.

**E.      Count V—Recovery of Avoided Transfers Under 11 U.S.C. § 550(a)**

In Count V of the First Amended Complaint, the Trustee seeks to recover the fraudulent

transfers referenced in the pleading. This code section provides that, to the extent a transfer is avoided under other sections of the code, including § 544 and 548, the Trustee may recover the value of such transfers from Methodist. Thus, to the extent any of the predicate causes of action survive, Count V is still viable.

### F. Opportunity to Amend

Methodist urges that all the claims against it be dismissed with prejudice because any further amendment would be futile. As support for this assertion, Methodist relies on documentation that is not before the Court. At this stage of the proceedings, the Court is not prepared to state that any amendment would be futile, and the dismissals will be without prejudice to filing an amended complaint—a more carefully drafted complaint in conformity with Rule 8 might state a claim. Moreover, the Trustee may be able to state with particularity the circumstances constituting fraud with respect to the security deposit. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."); *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.") (quotation marks and citation omitted).

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss First Amended Complaint [ECF No. 8] is GRANTED IN PART and DENIED IN PART. Counts I, III, and IV of the First Amended Complaint are dismissed without prejudice. A portion of the Trustee's actual fraud claim, Count II, remains pending, as does Count V. If, after consideration of the Court's Opinion and Order, the Trustee elects to seek an amendment to his pleading, he is directed to file the appropriate motion within 28 days of receiving this Opinion and Order.

SO ORDERED on July 2, 2013.

                                             s/ Theresa L. Springmann
                                             THERESA L. SPRINGMANN
                                             UNITED STATES DISTRICT COURT
                                             FORT WAYNE DIVISION